MAX F. BRUNSWICK ET AL. *v.* INLAND WETLANDS
COMMISSION OF THE TOWN OF BETHANY ET AL.
(8983)

O'CONNELL, FOTI and LANDAU, Js.

Argued January 17—decision released August 20, 1991

*Max F. Brunswick,* for the appellants (plaintiffs).

*Gerald P. Dwyer,* for the appellee (named defendant et al.).

*Mark L. Goodman,* for the appellee (defendant DJM Development Corporation).

O'CONNELL, J. The plaintiffs, after a full hearing on the merits, challenge the trial court's dismissal of their

appeal from the Bethany inland wetlands commission's approval of a wetlands permit and subdivision proposal.[1] We do not reach the plaintiffs' claims because the dispositive issue, raised sua sponte by the court, is the validity of a writ signed by an attorney who was one of the named plaintiffs. We conclude that an attorney cannot sign the writ in a case in which he is a party and, therefore, the trial court was without subject matter jurisdiction to entertain the appeal.

The following facts are relevant to this appeal. Max F. Brunswick is an attorney admitted to the practice of law in this state. By virtue of General Statutes § 51-85[2] and Practice Book § 18,[3] he is also a commissioner of the Superior Court, a concomitant of which is the "power and authority" to sign writs.[4] Brunswick, one of ten plaintiffs attempting to bring the appeal, signed the writ[5] that accompanied the complaint and caused it to be served on the defendants.

The writ was issued on January 10, 1989. Approximately eleven months later, the commission moved to

[1] The defendants are the Bethany inland wetlands commission, the Bethany town clerk, the Connecticut commissioner of environmental protection, and DJM Development Corporation, to which the wetlands permit and subdivision approval was granted. For simplicity, reference to the commission is intended to include all the defendants.

[2] General Statutes § 51-85 provides in pertinent part: "Each attorney-at-law admitted to practice within the state, while in good standing, shall be a commissioner of the superior court and, in such capacity, may, within the state, sign writs . . . ."

[3] The pertinent part of Practice Book § 18 provides: "At the time such applicant [for admission to the bar] is admitted as an attorney the applicant shall be sworn as a commissioner of the superior court."

[4] It is important to observe that upon admission to the bar of this state, each attorney at law takes two separate and distinct oaths. One is the oath of an attorney pursuant to General Statutes § 1-25 and the other is the oath of a commissioner of the Superior Court pursuant to Practice Book § 18. It is in this latter capacity, as an officer of the Superior Court, that an attorney may issue writs and it is a clear conflict of interest for such an officer of the court to act in his own case by signing and issuing his own writ.

[5] Writ and citation are synonymous. See p. 545, infra.

dismiss the appeal on the ground that Brunswick, a party plaintiff, could not sign a writ in his own case, and, thus, the process was not signed by a commissioner of the Superior Court as required by General Statutes § 52-45a.[6] At this point, Brunswick withdrew the case as to himself as a plaintiff, signifying that his only connection with the case thereafter would be as attorney for the remaining plaintiffs. The trial court denied the motion to dismiss reasoning that the remaining nine plaintiffs were entitled to their day in court.

Although the commission failed to preserve this issue, it is the duty of the court to act whenever lack of subject matter jurisdiction comes to its attention. *Pet* v. *Department of Health Services,* 207 Conn. 346, 351, 542 A.2d 672 (1988). Accordingly, the issue was raised sua sponte by this court at oral argument. The parties argued the question and filed supplemental briefs. The commission contends that this appeal should have been dismissed because the trial court had no jurisdiction to entertain an appeal when the writ was signed by a commissioner of the Superior Court in his own case.

We begin our analysis with a determination of whether a *writ* used to commence a civil action is analogous to a *citation* used to initiate an administrative appeal. In Edward L. Stephenson's treatise on Connecticut civil procedure, he states that "[i]n appeals from administrative agencies, the writ is designated as a 'citation' but serves the same function. The citation, like the writ, is a direction to the officer to sum-

---

[6] General Statutes § 52-45a provides: "Civil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day and the date and place for the filing of an appearance. The writ shall be accompanied by the plaintiff's complaint. The writ may run into any judicial district and shall be signed by a commissioner of the superior court or a judge or clerk of the court to which it is returnable."

mon the agency whose decision is being appealed
. . . . As with the writ, it is the direction to the offi-
cer to cite the agency which confers upon him the
authority to make service of process. Without the cita-
tion, any attempted service is a nullity and the appeal
is subject to abatement for want of jurisdiction."
1 E. Stephenson, Connecticut Civil Procedure (2d Ed.)
§ 18 (a). Our Supreme Court has ruled that a citation
is simply the correct designation for a writ in an admin-
istrative appeal. *Johnson* v. *Zoning Board of Appeals,*
166 Conn. 102, 104 n.1, 347 A.2d 53 (1974). "Without
a citation signed by competent authority, the officer
to whom it is given for service receives no power or
authority to execute its command, and becomes 'little
more than a delivery man.' " *Sheehan* v. *Zoning Com-
mission,* 173 Conn. 408, 413, 378 A.2d 519 (1977).
These authorities lead us to the inescapable conclusion
that the words "writ" and "citation" are synonymous.
For simplicity, unless the context requires otherwise,
we will refer to the instrument as a writ whether it was
in fact a writ or a citation in any particular case.

The principle that an attorney cannot sign a writ in
his own case has its genesis in *Doolittle* v. *Clark,* 47
Conn. 316, 322–23 (1879). In *Doolittle,* three New
Haven county attorneys commenced an action by vir-
tue of a writ which one of them had signed and issued
as a commissioner of the Superior Court. The defend-
ants pleaded in abatement of the action.[7] The Supreme
Court held that the action should be abated and com-
mented that it had long been the practice and inter-
pretation of the statute governing the issuance of
process in civil actions that an otherwise authorized
court officer could not sign and issue civil process in
his own case. Id. The reasoning of the *Doolittle* court

---

[7] A plea in abatement is the precursor of the modern motion to dismiss.
See Practice Book § 142.

is as applicable today as it was more than a century ago and bears quoting at length. "The writ in order to be 'due process of law' must be signed by . . . a . . . commissioner of the Superior Court . . . or a . . . clerk of the court to which it is returnable. One object of the statute clearly is to throw some safeguard around the rights of a defendant, and he might presume that at least the officers named in the act would not sign a writ for groundless cause, nor grant one against his person or property to gratify the inclination of a litigious plaintiff. Another purpose which the statute has in view is that the writ shall be an instrument of dignity, bearing the impress of the power and authority of the state, and be respected and obeyed by the citizen against whom it is directed, its purpose being to compel his attendance before a proper tribunal, that justice may be done. *But if each man who happens to be a . . . commissioner of the Superior Court . . . may sign and issue a writ in his own name, there is no safeguard thrown around the process and no dignity attached to it.*" (Emphasis added.) Id. Today, when it is fashionable in some circles to malign the courts and the legal profession, we must be even more vigilant in safeguarding the dignity of the process of law.

An attorney is not merely the servant or agent of his client. His oath imposes on him duties and obligations to the court as well as to his client. He is an officer of the court and like the court itself, under a duty to advance the ends of justice. "Where his duties to his client conflict with those he owes to the public as an officer of the court in the administration of justice, the former must yield to the latter." 7 Am. Jur. 2d, Attorneys at Law § 5; *Langen* v. *Borkowski,* 188 Wis. 277, 301, 206 N.W. 181 (1925).

The plaintiffs question whether the *Doolittle* proscription applies to administrative appeals. This question

was answered in *Willard* v. *West Hartford,* 135 Conn. 303, 305, 63 A.2d 847 (1949), a zoning appeal in which the court articulated that "[t]he plaintiff is a commissioner of the Superior Court and himself signed the citation. This he may not do."

Furthermore, General Statutes § 22a-43 prescribes that appeals from decisions of an inland wetlands commission to the Superior Court shall be taken in accordance with General Statutes § 4-183 (Uniform Administrative Procedures Act). Both our Supreme Court and this court have repeatedly held that a valid appeal under § 4-183 must include a citation *signed by a competent authority. McQuillan* v. *Department of Liquor Control,* 216 Conn. 667, 672, 583 A.2d 633 (1990); *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities,* 201 Conn. 350, 356, 514 A.2d 749 (1986); *Shapiro* v. *Carothers,* 23 Conn. App. 188, 190, 579 A.2d 583 (1990); *DelVecchio* v. *Department of Income Maintenance,* 18 Conn. App. 13, 15, 555 A.2d 1007 (1989); *Atkins* v. *Bridgeport Hydraulic Co.,* 5 Conn. App. 643, 645–46, 501 A.2d 1223 (1985). Thus, we conclude that a citation is a prerequisite to an administrative appeal and the line of cases emanating from *Doolittle* v. *Clark,* supra, applies to citations as well as to writs. Consequently, an attorney may not sign the citation in an administrative appeal in which he is a plaintiff.

The plaintiffs incorrectly argue that in similar situations the Supreme and Appellate Courts have both ignored this jurisdictional defect and allowed appeals to be prosecuted to conclusion. The plaintiffs confuse the right of an attorney to appear pro se in his own case with his authority to sign and issue the writ in such a case. The plaintiffs rely on *Masters* v. *Masters,* 201 Conn. 50, 513 A.2d 104 (1986); *Burton* v. *Planning Commission,* 13 Conn. App. 400, 536 A.2d 995 (1988),

aff'd, 209 Conn. 609, 553 A.2d 161 (1989), and *Perlmutter* v. *Johnson,* 6 Conn. App. 292, 505 A.2d 13, cert. denied, 200 Conn. 801, 509 A.2d 517 (1986). Because the opinions published in the Connecticut Reports and Appellate Reports show that in those cases the plaintiff-attorneys argued their own appeals pro se, the plaintiffs here incorrectly infer that these pro se attorneys must have signed and issued their own writs. In none of the cases cited, however, did the plaintiff-attorneys sign and issue their own writs. Each attorney litigant had the writ signed by either another attorney or a clerk of the Superior Court.[8] Once a court acquires jurisdiction by virtue of a writ issued and signed by a competent authority, an attorney, like any other party, may file a pro se appearance and be heard. Unlike in the present case, this procedure was properly followed in each of the cases relied on by the plaintiffs. See *Presnick* v. *Esposito,* 8 Conn. App. 364, 367 n.2, 513 A.2d 165 (1986). Thus, a lawyer litigant has no fewer rights than a lay party nor does he have any greater rights when it comes to his own case. We do not penalize an attorney because of his profession. Our intention is that attorneys be treated equally with other parties when it comes to their own cases. To allow lawyer litigants to issue writs in their own cases would give them an advantage over lay parties and this was never intended by our jurisprudence.

The plaintiffs claim that until July 1, 1979, a pro se party could not sign his own complaint and that all complaints had to be signed by a commissioner of the Supe-

[8] Judicial notice of the original case files discloses the following: (1) In *Masters* v. *Masters,* 201 Conn. 50, 513 A.2d 104 (1986), the writ was signed and issued by Elaine Mrosek, clerk of the Superior Court for the judicial district of Tolland. (2) In *Burton* v. *Planning Commission,* 13 Conn. App. 400, 536 A.2d 995 (1988), the citation was signed and issued by Louis A. Pace, Jr., clerk of the Superior Court of the judicial district of Danbury. (3) In *Perlmutter* v. *Johnson,* 6 Conn. App. 292, 505 A.2d 13 (1986), the writ was signed and issued by Stanley A. Jacobs, a commissioner of the Superior Court.

rior Court. This misstates the history of writs and complaints as well as confusing the two. A writ is the document that confers authority on a proper officer to make service of process; Stephenson, supra; whereas a complaint is the plaintiff's first pleading that sets forth his cause of action. See Practice Book § 131. Prior to the promulgation of its present form, the writ and complaint were generally merged into a single document commonly called the "writ, summons and complaint." See Stephenson, supra, § 79 (a). Stephenson recognized that "[i]t has . . . been a long-standing practice to embody the complaint within the writ, although there is nothing in the rules to prohibit putting the complaint on a separate sheet." Id., § 79 (f). When the consolidated writ, summons and complaint format was utilized, a signature of a commissioner of the Superior Court was required. If the complaint was on a separate page, however, it could be signed by a pro se party like any other pleading.

The plaintiffs next analogize an attorney's signing a writ to a pro se plaintiff's signing his own complaint and having a clerk of the Superior Court sign the writ. We reject this comparison. The duty of a clerk is to "review the proposed writ of summons and, unless it is defective as to form or does not contain a bond for prosecution . . . [the clerk] shall sign it." Practice Book § 49.[9] The limited purpose of this procedure is to guarantee parties not represented by counsel access to the courts. A logical extension of the plaintiffs' argu-

[9] Ironically, a court clerk might have found that the citation in this case was defective as to form and refused to sign it. The "citation" appears on form 103.1 (JD-CV-1), the employment of which for administrative appeals is expressly forbidden by Practice Book § 49. Although the mistaken use of form JD-CV-1 in an administrative appeal is not grounds for dismissal absent prejudice; *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities,* 201 Conn. 350, 354–57, 514 A.2d 749 (1986); *Carlson* v. *Fisher,* 18 Conn. App. 488, 493, 588 A.2d 1029 (1989); query whether a clerk would sign a writ that contravened the express prohibition of § 49.

ment is that a clerk could sign a writ in his own case, a practice prohibited by the usual conflict of interest rules. The plaintiffs imply that the procedure of having the clerk of the court sign a writ is of recent vintage. We call the plaintiffs attention to the reference in *Doolittle* v. *Clark,* supra, to a clerk's signing a writ. Thus, for more than one hundred years, clerks have been authorized to sign writs submitted to them to accompany complaints signed by pro se plaintiffs.

We are not prepared to extend the limited rule relating to a clerk's duty to sign writs to encroach on the long standing principle that the signing and issuing of a writ by a commissioner of the Superior Court is discretionary and not a mere ministerial matter. *In re Application of Griffiths,* 162 Conn. 249, 255, 294 A.2d 281 (1972), rev'd on other grounds, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d. 910 (1973); *In re Application of Sharkiewicz,* 143 Conn. 724, 726, 126 A.2d 822 (1956); *Sharkiewicz* v. *Smith,* 142 Conn. 410, 412, 114 A.2d 691 (1955). Although body attachments were statutorily eliminated in 1981 and the prejudgment remedy statute curtailed the unfettered seizure of property, the issuance of a writ remains a very serious matter. Signing a writ is a process that starts the wheels of justice turning. A person is summoned to court, incurs attorney's fees and costs, is subjected to the glare of publicity, and is forced to endure the extremely emotional experience of litigation. The exercise of this writ issuing perogative by an attorney, acting as an officer of the court, is one of consequence and should not be done indiscriminately. *Sharkiewicz* v. *Smith,* supra. " 'The practice of law is not a craft or a trade; it is a profession the main purpose of which is to aid in the doing of justice according to law between the state and the individual and between man and man." *In re application of Griffiths,* supra. We are cognizant

of authority that states that certain aspects of this profession are commercial in nature; *Bates* v. *State Bar of Arizona,* 433 U.S. 350, 380–82, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977) (which held that advertising by lawyers is protected commercial speech); *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 517, 461 A.2d 938 (1983); *Noble* v. *Marshall,* 23 Conn. App. 227, 230, 579 A.2d 594 (1990) (Connecticut Unfair Trade Practices Act claims under limited circumstances apply to the conduct of the profession of law). We are not persuaded, however, that these limited inroads of commercialism have eroded the professional standards of the practice of law.

The plaintiff argues that case law has changed and that the current weight of authority now allows attorneys to sign writs in their own cases.[10] A careful search of all reported decisions of the Supreme and Appellate Courts fails to disclose even one case that has in any manner chipped away at this historically entrenched principle.[11] The plaintiffs quote from several trial court opinions as claimed authority. They do not, however, furnish us with copies of these opinions, as required by Practice Book § 294, which at best could have only persuasive merit and not the weight of binding authority on this court. *State* v. *Nardini,* 187 Conn. 109, 124, 445 A.2d 304 (1982). Under the doctrine of stare decisis, we look to decisions of the Supreme and Appellate Courts for authority for our decisions. When we are faced with

[10] The gravamen of the plaintiffs' argument is that this is an ancient doctrine that has not been recognized in modern case law. This is not true. The doctrine was recognized as recently as *Presnick* v. *Esposito,* 8 Conn. App. 364, 367 n.2, 513 A.2d 165 (1986).

[11] *Yudkin* v. *Gates,* 60 Conn. 426, 429, 22 A. 776 (1891), which concerned mittimuses signed by a justice of the peace, appears to be authority for this proposition, but in *Sharkiewicz* v. *Smith,* 142 Conn. 410, 412, 114 A.2d 691 (1955), the discussion in *Yudkin* was declared to be dictum and without force of precedent.

an issue of first impression, we appreciate being furnished with the generally well reasoned opinions of the trial courts; however, this issue is not an open question, and this court can not reexamine or reevaluate Supreme Court precedent. Whether a Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide. *Board of Education* v. *Bridgeport Education Assn.,* 9 Conn. App. 199, 203–204, 518 A.2d 394, cert. denied, 202 Conn. 802, 519 A.2d 1206 (1987).

The plaintiffs next argue, assuming arguendo that the writ is invalid as to the plaintiff Brunswick, that it remains somehow valid as to the other nine plaintiffs. They contend that a mistake on Brunswick's part in signing the writ should not affect their right to be in court. This argument overlooks the fact that *Doolittle* v. *Clark,* supra, the case that originated this rule, is on all fours with the present case. *Doolittle* involved three plaintiffs. The Supreme Court abated the entire action, not merely that portion of the case that pertained to the rights of the attorney who signed the writ. We cannot disregard nor overrule this direct Supreme Court precedent. *Board of Education* v. *Bridgeport Education Assn.,* supra. Thus, in the present case, because the writ was defective ab initio as to all plaintiffs, it did not confer jurisdiction on the court to hear the case.

The plaintiffs next claim that Brunswick's withdrawal of the case as to himself cured the defect and there is now no issue for this court to consider. We do not agree. The plaintiffs improperly rely on *State* v. *Schonagel,* 192 Conn. 652, 473 A.2d 300 (1984) and *M & L Homes, Inc.* v. *Zoning & Planning Commission,* 187 Conn. 232, 445 A.2d 159 (1982). These cases are inapposite. The *Schonagel* court held that there was nothing for it to consider after the appellant withdrew his appeal before the date scheduled for appellate argument. *Schonagel*

would be authority only if all the plaintiffs here withdrew their appeal. They have not done so. In *M & L Homes, Inc.*, the Supreme Court affirmed the trial court's refusal of a mandamus to approve a subdivision application that had been withdrawn. To be analagous here, the application to the commission would have to have been withdrawn while the matter remained before the commission. Obviously, this was not done.

The plaintiffs rely on the Supreme Court's quotation in *M & L Homes, Inc.*, from Webster, Third International Dictionary, defining "withdraw" to mean "to eliminate from consideration." That definition is not helpful in the present case where the issue is the propriety and legality of a plaintiff-attorney's signing a writ in his own case. Brunswick's withdrawal of himself as a plaintiff nearly a year after he issued the writ does not have nunc pro tunc effect so as to eliminate the issue from our consideration. "The rule that a plaintiff who is an attorney should not be allowed to sign a writ in his own case was intended to eliminate the possibility of using the courts as a means of harassment by litigious plaintiffs." *Cohen* v. *Ushinski,* 36 Conn. Sup. 69, 70, 411 A.2d 597 (1979). Allowing a plaintiff attorney to sign his own writ as long as he drops himself as plaintiff a year later obviously circumvents the purpose of the rule.

We conclude that Brunswick could not sign the writ in this case and, therefore, the appeal was not commenced by a proper authority and the defendant's motion to dismiss should have been granted. Although we concur with the trial court's dismissal of this appeal, it should have been dismissed on the ground that the trial court lacked jurisdiction.

The judgment is reversed and the case is remanded with direction to dismiss the matter for lack of subject matter jurisdiction.

In this opinion the other judges concurred.