MAX F. BRUNSWICK ET AL. *v.* INLAND WETLANDS COMMISSION OF THE TOWN OF BETHANY ET AL.
(14402)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and F. X. HENNESSY, Js.

542

Argued April 28—decision released June 23, 1992

*Max F. Brunswick,* for the appellants (plaintiffs).

*Gerald P. Dwyer,* for the appellees (named defendant et al.).

*Mark L. Goodman,* for the appellee (defendant DJM Development Corporation).

PETERS, C. J. The principal issue in this appeal is whether an attorney may sign and issue a citation[1] in

---

[1] The citation that is used to commence an administrative appeal is analogous to the writ used to commence a civil action. See General Statutes § 52-45a; *Hillman* v. *Greenwich,* 217 Conn. 520, 526, 587 A.2d 99 (1991); *Sheehan* v. *Zoning Commission,* 173 Conn. 408, 412, 378 A.2d 519 (1977); *Johnson* v. *Zoning Board of Appeals,* 166 Conn. 102, 104 n.1, 347 A.2d 53 (1974); see also 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970 & Sup.) § 18 (a).

an administrative appeal in which he is a party plaintiff. The ten original plaintiffs,[2] who are individual property owners in Bethany, filed an administrative appeal in Superior Court to challenge the action of the defendant inland wetlands commission of the town of Bethany (commission) granting the application of DJM Development Corporation (DJM) for a permit for a subdivision.[3] See General Statutes § 22a-42a (c) and (d). The commission moved the trial court to dismiss the plaintiffs' appeal on the ground that one of the original plaintiffs, Attorney Max F. Brunswick,[4] had signed the citation in their appeal. The trial court denied the commission's motion to dismiss, but subsequently rendered judgment on the merits for the commission and DJM. The plaintiffs appealed to the Appellate Court, which determined that Brunswick's signature on the citation had deprived the trial court of subject matter jurisdiction to hear the plaintiffs' administrative appeal. The Appellate Court accordingly ordered that the plaintiffs' appeal be dismissed. *Brunswick* v. *Inland Wetlands Commission*, 25 Conn. App. 543, 596 A.2d 463 (1991). We granted the plaintiffs' petition for certification to appeal[5] and now reverse the judgment of the Appellate Court.

[2] The original plaintiffs to the administrative appeal were Max F. Brunswick, Linda Brunswick, James D. Kelly, Helen Kelly, Robert J. Downs, Jean Downs, George Reynolds, Eldona Reynolds, Edward Coppola and Jacqueline Coppola.

[3] The plaintiffs also named as defendants the town clerk of Bethany and the commissioner of environmental protection of the state of Connecticut. The term "commission" as used in this opinion refers to both the defendant inland wetlands commission and the defendant town clerk. The commissioner of environmental protection did not appear before the Superior Court to contest the plaintiffs' administrative appeal, nor has he filed an appearance in the present appeal.

[4] Attorney Brunswick has since withdrawn as a plaintiff to the appeal.

[5] Certification was granted limited to the following questions:

"1. Did the Appellate Court properly hold that the trial court should have dismissed the appeal for want of subject matter jurisdiction because one of the ten plaintiffs was an attorney who also signed the writ?

The following facts are not in dispute. DJM applied to the commission for a permit for a fourteen lot subdivision on property it owned in Bethany. The commission granted DJM's application. Ten individuals owning property that abuts DJM's parcel filed an administrative appeal challenging the propriety of the commission's approval of DJM's subdivision application. Brunswick, one of the plaintiffs, who is an attorney admitted to practice law in Connecticut and a commissioner of the Superior Court; see General Statutes § 51-85; Practice Book § 18; signed the citation that accompanied the complaint and caused it to be served on the defendants. Approximately eleven months later, the commission filed a motion to dismiss the plaintiffs' appeal "on the grounds that the writ and citation were not signed by a Commissioner of the Superior Court . . . ." Four days later, Brunswick withdrew from the case and indicated that he would limit his future involvement in the case to the role of counsel for the remaining nine plaintiffs. The trial court, *Berdon, J.,* after hearing oral argument on the motion to dismiss, denied the motion on the basis that the nine remaining plaintiffs "have a right to be in this Court." The trial court, *Flanagan, J.,* subsequently adjudicated the case on the merits and affirmed the commission's approval of DJM's application for a subdivision permit.

The plaintiffs appealed to the Appellate Court. After supplemental briefing on the jurisdictional issue, the Appellate Court, relying on this court's decision in *Doolittle* v. *Clark,* 47 Conn. 316 (1879), concluded that

"2. Was the Appellate Court correct in refusing to find that the withdrawal of the plaintiff-attorney from the appeal cured any defect in the appeal as to the other nine plaintiffs?

"3. Does General Statutes § 8-8 (p) authorize the plaintiffs' attempt to cure the defect relied upon by the Appellate Court in dismissing the action?" *Brunswick* v. *Inland Wetlands Commission,* 220 Conn. 929, 598 A.2d 1100 (1991).

the plaintiffs' administrative appeal should be dismissed for lack of subject matter jurisdiction. *Doolittle* held that an attorney cannot sign a writ in his own case. Id., 320–23. The Appellate Court ruled that *Doolittle* was still good law, both on its merits; *Brunswick* v. *Inland Wetlands Commission,* supra, 546–47; and because any reevaluation of its continued validity should be undertaken by this court. Id., 553.

We granted certification to consider whether we should continue to adhere to the rule of law established in *Doolittle.* The plaintiffs urge this court to overrule *Doolittle* because the policy reasons underlying the court's decision in 1879 no longer exist. In the alternative, the plaintiffs argue that Brunswick's withdrawal from the administrative appeal cured any defect as to the other nine plaintiffs and that General Statutes § 8-8 (p)[6] authorizes such a cure of their appeal. The commission and DJM assert, to the contrary, that the policy considerations of the rule that an attorney may not sign the writ in his own case "continue to be as viable in the late twentieth century as in 1879 . . . ." They further contend that Brunswick's withdrawal from the appeal did not cure the defect as to the remaining plaintiffs because the citation was "defective ab initio as to all plaintiffs" and that § 8-8 (p) does not cure such a defect. We agree with the plain-

---

[6] General Statutes § 8-8 provides in pertinent part: "(p) The right of a person to appeal a decision of a board to the superior court, and the procedure prescribed in this section, shall be liberally interpreted in any case where a strict adherence to these provisions would work surprise or injustice. The appeal shall be considered to be a civil action and, except as otherwise required by this section or the rules of the superior court, pleadings may be filed, amended or corrected, and parties may be summoned, substituted or otherwise joined, as provided by the general statutes." "Board" is defined in § 8-8 (a) (2) as "a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission the decision of which may be appealed pursuant to this section."

tiffs that current procedural safeguards have eroded many of the concerns upon which the *Doolittle* rule was predicated. We, therefore, overrule *Doolittle* and reverse the judgment of the Appellate Court.

I

The procedures that govern an administrative appeal from the decision of an inland wetlands commission are, by virtue of General Statutes § 22a-43 (a),[7] the procedures specified by the Uniform Administrative Procedure Act, General Statutes § 4-183. Under § 4-183 (b), an administrative appeal must include a proper citation in order to invoke the jurisdiction of the court. See *McQuillan* v. *Department of Liquor Control*, 216 Conn. 667, 671, 583 A.2d 633 (1990); *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities*, 201 Conn. 350, 356, 514 A.2d 749 (1986); see also *Village Creek Homeowners Assn.* v. *Public Utilities Commission*, 148 Conn. 336, 339, 170 A.2d 732 (1961). "In administrative appeals, the citation is the writ of summons that directs the sheriff or some other proper officer to seek out the defendant agency and to summon it to a particular sitting of a particular court on a specified day. 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970 & Sup.) § 18. 'The citation, signed by a competent authority, is the warrant which bestows upon the officer to whom it is given for service the power and authority to execute its command. . . .' " *McQuillan* v. *Department of Liquor Control*, supra.

---

[7] General Statutes § 22a-43 provides in pertinent part: "(a) The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may appeal to the superior court in accordance with the provisions of section 4-183 . . . . Such appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court."

Section 22a-43 (a) provides that an appeal from an inland wetlands commission "shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court." A proper citation, in accordance with General Statutes § 52-45a,[8] is a document that, in addition to describing the parties, the court to which it is returnable, the return date and the date and place for filing an appearance, is "signed by a commissioner of the superior court or a judge or clerk of the court to which it is returnable." As in *Doolittle,* the issue in this case is whether a citation is jurisdictionally defective if it is signed by a commissioner of the Superior Court who is himself a party to the litigation. The commission and DJM contend, as the Appellate Court held, that such a citation fails to confer subject matter jurisdiction on the Superior Court.

Construing the statute on mesne process in effect in 1879,[9] this court in *Doolittle* v. *Clark,* supra, concluded that an attorney was precluded from signing a writ in a case in which he was a plaintiff. Id., 322–23. The plaintiffs in that case were partners in a law firm. One of

---

[8] "[General Statutes] Sec. 52-45a. (Formerly Sec. 52-89). COMMENCEMENT OF CIVIL ACTIONS. CONTENTS AND SIGNATURE OF PROCESS. Civil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day and the date and place for the filing of an appearance. The writ shall be accompanied by the plaintiff's complaint. The writ may run into any judicial district and shall be signed by a commissioner of the superior court or a judge or clerk of the court to which it is returnable."

[9] The statute in effect in 1879 provided that "[t]he process shall describe the parties upon whom it is to be served, the court to which it is returnable, and the time and place of appearance; and all writs in actions at law shall describe the plaintiff and the form of action. All such process shall be signed by the Governor, Lieutenant Governor, a senator, justice of the peace, commissioner of the Superior Court, or a judge, or clerk of the court to which it is returnable; and writs signed by any of said authorities may run into any county." General Statutes (1875 Rev.) title 19, c. 1, § 1, pp. 396–97.

the plaintiffs had signed the writ in a contract action brought in the name of the law firm. The defendants filed a plea in abatement on that ground. We stated that "[i]t would not seem to require any extended argument to show that this ought not to be allowed under the laws of this state. . . . It would be putting altogether too much power into the hands of one man, to be exercised for his own individual benefit, for if a plaintiff can sign his own writ in an ordinary action arising upon contract, he may sign it in an action arising from a tort, and without responsibility other than his own bond, may attach all the estate of the defendant or attach his body and commit him to prison." Id., 320–21. This court further stated that "[o]ne object of the [mesne process] statute clearly is to throw some safeguard around the rights of a defendant, and that he might presume at least that the officers named in the act would not sign a writ for a groundless cause, nor grant one against his person or property to gratify the inclination of a litigious plaintiff. Another purpose which the statute has in view is that the writ shall be an instrument of dignity, bearing the impress of the power and authority of the state, and be respected and obeyed by the citizen against whom it is directed, its purpose being to compel his attendance before a proper tribunal, that justice may be done. But if each man who happens to be a justice of the peace, or commissioner of the Superior Court, or senator, may sign and issue a writ in his own name, there is no safeguard thrown around the process and no dignity attached to it." Id., 322–23. We abated the writ on these public policy grounds. Id., 323.

Seventy years after our decision in *Doolittle*, we extended its holding to apply as well to citations signed by attorneys who are plaintiffs in administrative appeals. In *Willard* v. *West Hartford*, 135 Conn. 303, 305, 63 A.2d 847 (1949), an appeal from the decision

of a zoning board of appeals, we stated that "[t]he plaintiff is a commissioner of the Superior Court and himself signed the citation. This he may not do." In recent years, however, numerous trial court decisions have questioned the continued validity of the *Doolittle* principle.

## II

The Appellate Court's ruling in this case construed *Doolittle* as stating a rule relating to the Superior Court's subject matter jurisdiction. *Brunswick* v. *Inland Wetlands Commission,* supra, 545–49. " 'The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage of the proceedings.' " *Neyland* v. *Board of Education,* 195 Conn. 174, 177, 487 A.2d 181 (1985); see also Practice Book § 145; *McQuillan* v. *Department of Liquor Control,* supra, 670; *Pet* v. *Department of Health Services,* 207 Conn. 346, 351, 542 A.2d 672 (1988).

Just three months after our decision in *Doolittle,* this court decided, however, that defendants who had not objected to the plaintiff attorney's signature on the writ "until the case had been in court for nearly two years" had waived their objection to the defect. *Parrott* v. *Housatonic R.R. Co.,* 47 Conn. 575, 576 (1880). Because the defendants had pleaded the general issue and the case was awaiting trial upon its merits, we did "not hesitate to regard the objection to the legal signing and issuing of the writ as waived," and, therefore, found no error. Id.

In *Brown* v. *Allen,* 166 Conn. 174, 175–76, 348 A.2d 666 (1974), this court similarly declined to dismiss an action on the basis that the writ had "not in fact [been] signed by a commissioner of the Superior Court . . . but, rather, [had been] signed by the plaintiff acting by an agent," and, therefore, the defendant contended, had not complied "with statutory requirements for the

issuance of mesne process." We noted that, despite the claimed defect in the writ, "the defendant nevertheless [had] entered a general appearance and [had] filed no pleading to open the default or to contest the court's jurisdiction but [had] proceeded to contest the merits of the plaintiff's contentions and the relief which should be granted to him. Under these circumstances and the fact that the defendant failed to enter a special appearance . . . and properly to plead his jurisdictional contentions, it must be held that the defendant submitted himself to the jurisdiction of the court and waived any right to claim that the court lacked jurisdiction over him because of any defect in the process to which he had responded." Id., 176–77; see also 1 E. Stephenson, supra, (1982 Sup.) § 17 (a) ("A claim that a writ is improperly executed is waived by failure to file a timely motion to dismiss.").

Although *Parrott* and *Brown* were civil causes of action and not administrative appeals, we conclude that the alleged defect in the citation in the present case affected only the court's personal jurisdiction over the defendants. While we require strict compliance with statutory provisions upon the initiation of an administrative appeal; see *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities,* supra, 356; the statute on mesne process, § 52-45a, does not on its face exclude an attorney from signing a writ in a case in which he is a plaintiff. The rule that an attorney may not sign a writ in his own case, and the application of that rule to an administrative appeal, has developed solely through case law. See, e.g., *Doolittle* v. *Clark,* supra, 320; *Yudkin* v. *Gates,* 60 Conn. 426, 428, 22 A. 776 (1891) (applying rule to judge or clerk); *Willard* v. *West Hartford,* supra, 304. Because the writs used to commence civil actions are analogous to the citations used to commence administrative appeals, there is no basis for regarding such a defect in the one as impli-

cating subject matter jurisdiction, while regarding the defect in the other as relating only to personal jurisdiction. Indeed, we have held in *Johnson* v. *Zoning Board of Appeals,* 166 Conn. 102, 107–108, 347 A.2d 53 (1974), that an improperly executed citation implicates the personal jurisdiction of the court.

An improperly executed writ or citation does not, therefore, affect the subject matter jurisdiction of the trial court. As a defect in having the court acquire personal jurisdiction over the defendant, an improperly executed citation may be waived by the defendant. In this case, such a waiver occurred when the commission and DJM failed to file a timely motion to dismiss the administrative appeal in the trial court. A defendant may contest the personal jurisdiction of the court "even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance." Practice Book § 142. The commission's motion to dismiss was not filed until December 19, 1989, approximately eleven months after the commission had filed its appearance. DJM did not, so far as the record indicates, contest the execution of the citation at any time. The commission and DJM, therefore, had submitted to the jurisdiction of the trial court and the Appellate Court was mistaken in ruling to the contrary. The Appellate Court's mischaracterization of the jurisdictional implications of *Doolittle* requires a reversal of its judgment.

### III

Because the commission and DJM failed to preserve their jurisdictional challenge in timely fashion, we need not consider the continuing validity of the rule in *Doolittle* v. *Clark,* supra. Because the issue has been fully briefed, however, and has frequently arisen in the Superior Court, we will, in the interests of our supervisory role over the administration of justice in this state, reex-

amine the propriety of a citation signed by an attorney in a case in which the attorney is a plaintiff.

There were three bases for this court's decision in *Doolittle* that an attorney may not sign a writ in his own case. First, we were attempting to safeguard against attorneys who, acting in their own interests, could summarily "attach all the estate of the defendant or attach his body and commit him to prison" merely upon their signature. Id., 321. Second, this court was responding to the concern that, if allowed to sign writs in their own cases, litigious attorneys would commence groundless claims or claims intended solely to harass another. Id., 322. Third, we were concerned that allowing attorneys to sign their own writs would degrade the dignity of the writ and the process of law. Id., 322–23.

The law governing attachments has changed dramatically since 1879. "Prior to the adoption of Public Act 73-431 [in 1973], writs of attachment signed by a commissioner of the Superior Court could be, and commonly were, issued by attorneys as commissioners of the Superior Court without notice, hearing or any judicial action." *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 624, 356 A.2d 893 (1975). Under current law, however, statutory authorization for body attachments has been eliminated; see Public Acts 1981, No. 81-410; and a writ of attachment can no longer "be issued at the discretion of the commissioner of the Superior Court and without a judicial order. It can now be issued only after a due process judicial hearing on notice and pursuant to an order of the court." Id., 628; see General Statutes §§ 52-278a through 52-278d; see also *Connecticut* v. *Doehr,* 500 U.S.     , 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991) (invalidating as unconstitutional General Statutes § 52-278e, which allowed ex parte attachments under certain circumstances). Thus, the concerns stemming from an attorney's authority

to attach another's body or property for his own benefit merely upon his signature are no longer viable.

The fear that litigious attorneys will bring groundless claims to harass defendants merely because they are authorized to sign writs on their own behalf does not warrant adherence to the rule in *Doolittle*. All attorneys in this state are bound by the Rules of Professional Conduct not to "bring . . . a proceeding . . . unless there is a basis for doing so that is not frivolous"; Rules of Professional Conduct 3.1; and have taken an oath not to "wittingly or willingly promote, sue or cause to be sued, any false or unlawful suit, or give aid, or consent, to the same," and to delay "no man for lucre or malice." General Statutes § 1-25; see also *Sharkiewicz v. Smith,* 142 Conn. 410, 412–13, 114 A.2d 691 (1955). "An attorney 'as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him.' *In re Peck,* 88 Conn. 447, 450, 91 A. 274 (1914). This 'unique position as officers and commissioners of the court . . . casts attorneys in a special relationship with the judiciary and subjects them to its discipline.' (Citations omitted.) *Heslin v. Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 524, 461 A.2d 938 (1983)." *Statewide Grievance Committee v. Rozbicki,* 211 Conn. 232, 237–38, 558 A.2d 986 (1989). These professional responsibilities govern the conduct of attorneys whether they represent themselves or others. The accountability of all attorneys for their professional conduct provides an adequate safeguard to protect defendants against groundless claims brought by litigious attorneys.

Lastly, the apprehension that allowing an attorney to sign a writ of process will somehow degrade the process of law is no longer sustainable. This court concluded, in 1955, that a plaintiff cannot compel a commissioner of the Superior Court to sign a writ of mesne process.

*Sharkiewicz* v. *Smith,* supra, 412. We emphasized, in that case, that the signing of a writ is not a mere ministerial act and that it should not be undertaken indiscriminately. Id.; see also *In re Application of Griffiths,* 162 Conn. 249, 255, 294 A.2d 281 (1972), rev'd on other grounds, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973); *Doolittle* v. *Clark,* supra, 320. In 1978, however, the Practice Book section concerning mesne process was amended to provide that "[i]f any person is proceeding without the assistance of counsel, he shall sign the complaint and present the complaint and proposed writ of summons to the clerk . . . ." Practice Book § 49. It further provides that "the clerk shall review the proposed writ of summons and, unless it is defective as to form or does not contain a bond for prosecution . . . shall sign it." Practice Book § 49; see also 1 E. Stephenson, supra, § 17. The purpose of the amendment was no doubt to provide greater access to the courts of this state. The act of the clerk in signing the writ on behalf of a pro se plaintiff is, however, purely ministerial. The clerk has no discretion whatsoever to refuse to sign the writ of a pro se litigant in a cause of action unless the writ is defective as to form or lacks a bond for prosecution. At this stage of our law, when an attorney who is representing himself pro se can have his writ signed by a clerk acting in a ministerial role, we cannot discern how allowing that same attorney to sign his or her own writ could diminish in any way the dignity of the process of law.

Absent the public policy reasons that existed in 1879, and in light of the change in the Practice Book, adherence to the rule that an attorney may not sign a writ in a case in which he or she is a party plaintiff no longer serves any purpose. "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the

grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." O. Holmes, "The Path of the Law," 10 Harv. L. Rev. 457, 469 (1897). We, therefore, overrule *Doolittle* v. *Clark,* supra, and its progeny.[10]

The judgment is reversed and the case is remanded to the Appellate Court for consideration of the merits of the plaintiffs' claims challenging the decision of the commission.

In this opinion the other justices concurred.

---

[10] In view of our holding, we need not consider the remaining two issues certified on appeal.