JOLLY, INC., ET AL. *v.* ZONING BOARD OF APPEALS
OF THE CITY OF BRIDGEPORT ET AL.
(15212)

Peters, C. J., and Callahan, Borden, Berdon and Norcott, Js.

of bonds and notes whose proceeds are sometimes restricted to a specific purpose. See New Haven Charter § 69.

[21] See footnote 8.

Argued January 10—officially released May 21, 1996

*Gregory M. Conte,* for the appellants (plaintiffs).

*Arthur C. Laske III,* assistant city attorney, with whom, on the brief, was *Barbara Brazzel-Massaro,* associate city attorney, for the appellee (named defendant).

*George J. Markley,* with whom was *Robert M. Josovitz,* for the appellee (defendant Cyrco, Inc.).

NORCOTT, J. The principal issue in this appeal is whether we should continue to adhere to our longstanding interpretation of "aggrieved person" in Gen-

eral Statutes § 8-8.[1] In accordance with existing precedent, any taxpayer in a municipality has automatic standing to appeal from a zoning decision involving the

[1] General Statutes § 8-8 provides in relevant part: "Appeal from board to court. Review by appellate court. (a) As used in this section:

"(1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.

"(2) 'Board' means a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission the decision of which may be appealed pursuant to this section, or the chief elected official of a municipality, or his designee, in a hearing held pursuant to section 22a-250, whose decision may be appealed.

"(b) Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court.

"(c) In those situations where the approval of a planning commission must be inferred because of the failure of the commission to act on an application, any aggrieved person may appeal under this section. The appeal shall be taken within twenty days after the expiration of the period prescribed in section 8-26d for action by the commission.

"(d) Any person affected by an action of a planning commission taken under section 8-29 may appeal under this section. The appeal shall be taken within thirty days after notice to him of the adoption of a survey, map or plan or the assessment of benefits or damages.

"(e) Service of legal process for an appeal under this section shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality. Service on the chairman or clerk of the board and on the clerk of the municipality shall be for the purpose of providing legal notice of the appeal to the board and shall not thereby make the chairman or clerk of the board or the clerk of the municipality a necessary party to the appeal.

sale of liquor in that community. The plaintiffs, Jolly, Inc., Richard Tuliano and Carman Tuliano,[2] appeal from the judgment of the trial court dismissing, for lack of aggrievement, their administrative appeal from the decision of the named defendant, the zoning board of

"(f) Service of process shall also be made on each person who petitioned the board in the proceeding, provided his legal rights, duties or privileges were determined therein. However, failure to make service within fifteen days on parties other than the board shall not deprive the court of jurisdiction over the appeal. If service is not made within fifteen days on a party in the proceeding before the board, the court, on motion of the party or the appellant, shall make such orders of notice of the appeal as are reasonably calculated to notify the party not yet served. If the failure to make service causes prejudice to the board or any party, the court, after hearing, may dismiss the appeal or may make such other orders as are necessary to protect the party prejudiced.

"(g) The appeal shall state the reasons on which it has been predicated and shall not stay proceedings on the decision appealed from. However, the court to which the appeal is returnable may grant a restraining order, on application, and after notice to the board and cause shown.

"(h) The authority issuing a citation in the appeal shall take from the appellant, unless the appellant is an official of the municipality, a bond or recognizance to the board, with surety to prosecute the appeal to effect and comply with the orders and decrees of the court.

"(i) Within thirty days after the return date to court, or within any further time the court allows, the board shall transmit the record to the court. The record shall include, without limitation, (1) the original papers acted on by the board and appealed from, or certified copies thereof, (2) a copy of the transcript of the stenographic or sound recording prepared in accordance with section 8-7a, and (3) the written decision of the board including the reasons therefor and a statement of any conditions imposed. By stipulation of all parties to the appeal, the record may be shortened. A party unreasonably refusing to stipulate to limit the record may be taxed by the court for additional costs. The court may require or permit subsequent corrections or additions to the record.

"(j) Any defendant may, at any time after the return date of the appeal, make a motion to dismiss the appeal. If the basis of the motion is a claim that the appellant lacks standing to appeal, the appellant shall have the burden of proving his standing. The court may, on the record, grant or deny the motion. The court's order on the motion may be appealed in the manner provided in subsection (o) of this section. . . ."

[2] Richard and Carman Tuliano are the owners and operators of Jolly, Inc., a corporation doing business as Jolly Time Package, a liquor store located at 874 Boston Avenue in Bridgeport. The property on which the store is located is owned by Richard and Carman Tuliano.

appeals of the city of Bridgeport (board), in favor of the defendant Cyrco, Inc. (Cyrco).[3] The plaintiffs' initial claim is that the trial court improperly concluded that Cyrco had not waived its right to contest jurisdiction by failing to file a motion to dismiss in accordance with § 8-8 (j). See footnote 1. The plaintiffs also claim that the trial court improperly concluded that they had failed to prove that they were aggrieved, in the classical sense, by the board's decision.[4] The plaintiffs also claim that the trial court, in dismissing their appeal for lack of subject matter jurisdiction, improperly ignored binding precedent wherein we have consistently concluded that taxpayers in zoning appeals involving the sale of liquor are a priori aggrieved under § 8-8 (a) and, consequently, have automatic standing to appeal.

We agree with the trial court that Cyrco did not waive its right to contest the court's jurisdiction to hear the appeal. We conclude, however, that our prior interpretation of § 8-8 (a) is proper and that the trial court ignored such precedent when it determined that the plaintiffs did not have standing to prosecute their appeal. We conclude, therefore, that the plaintiffs can pursue their appeal because they are taxpayers in the municipality and the board's decision involves the sale of liquor; thus they are presumed to be aggrieved. Accordingly, we reverse the judgment of the trial court.

The facts underlying the plaintiffs' claims are as follows. In November, 1993, Cyrco, acting through its president, James A. Cyr, petitioned the board for a variance from the city zoning regulations.[5] The petition requested

---

[3] Cyrco is a corporation that owns a liquor store located at 1426 Pembroke Street in Bridgeport, and an unoccupied building located at 572–578 Boston Avenue in Bridgeport.

[4] Because we conclude that the plaintiffs fall within the automatic aggrievement rule, we need not reach their classical aggrievement claim.

[5] Cyrco also petitioned the board for a variance of the regulations to permit it to expand a portion of its building located on Boston Avenue, wherein it intended to operate an ice cream store. This variance is not at issue in the present case. See footnote 7.

a variance of chapter 17, § 2,[6] of the regulations, which provides for a minimum of 1500 feet between liquor establishments, to permit Cyrco to relocate its existing liquor store from 1426 Pembroke Street to 572–578 Boston Avenue, where it would be located 1430 feet from the plaintiffs' liquor store.

After a public hearing, the board granted Cyrco's petition and the plaintiffs appealed to the trial court.[7] On appeal, the plaintiffs alleged that there had been insufficient proof of hardship to justify the board's decision to grant the variance requested by Cyrco.[8] Prior to reaching the issue of hardship, however, the court addressed the issue of the plaintiffs' aggrievement because it implicated the court's subject matter jurisdiction to hear the appeal.

At the outset, the court determined that the plaintiffs did not meet the criteria of statutory aggrievement, as provided in § 8-8 (a), whereby a person who owns land that abuts or is within a radius of 100 feet of the land

---

[6] Chapter 17, § 2, of the Bridgeport zoning regulations provides: "Within Fifteen Hundred Feet of Other Liquor Establishments. No building or premises shall be used either in whole or in part for the sale of alcoholic liquor under any tavern, restaurant, druggist or all-alcoholic liquor package store permit issued by said Liquor Control Commission if any entrance to such building or premises within the territorial limits of the City of Bridgeport shall be within 1,500 feet in any direction from the entrance to any other building or premises which shall be used for the sale of alcoholic liquor under either a tavern, restaurant, druggist or all-alcoholic liquor package store permit, whether it is of the same or of a different class or permit."

[7] Carman Tuliano appeared at the public hearing in opposition to Cyrco's petition for the variance in connection with the liquor outlet. On appeal to the trial court, the plaintiffs initially challenged the board's grant of the variance in connection with the liquor outlet and the variance in connection with the ice cream store. During the trial court proceedings, however, the plaintiffs conceded that the variance relating to the relocation of Cyrco's liquor store is the only variance at issue in the present case. Our analysis, therefore, is confined to that variance.

[8] The zoning regulations provide the board with the power to grant variances upon a showing of unusual hardship. See Bridgeport Zoning Regs., c. 21, § 2 (e).

involved in the board's decision is considered automatically aggrieved.[9]

The court further concluded that the plaintiffs were not classically aggrieved because they had failed to prove that their personal legal interests were specially and injuriously affected by the board's decision. In that connection, the court found that there was no evidence that the board's decision to grant the variance would have an adverse effect on the plaintiffs' property from an increase in road traffic, a change in traffic patterns or any physical impact, and that the only special adverse impact advanced by the plaintiffs, namely, a loss of economic advantage due to increased business competition, was highly speculative and insufficient to establish classical aggrievement.

Finally, while acknowledging that the plaintiffs, as taxpayers challenging a zoning decision involving the sale of liquor, had established that they were automatically aggrieved under existing case law, the court, nevertheless, refused to allow the plaintiffs the benefit of this long-standing rule because it concluded that the reasoning of such prior cases was flawed, anachronistic and should be overruled.[10] In light of its findings that

---

[9] This finding has not been challenged on appeal.

[10] The trial court determined that our previous decisions involving the interpretation and subsequent application of § 8-8 (a) should be overruled for the following reasons: (1) that our reliance on the decision in *Beard's Appeal*, 64 Conn. 526, 534, 30 A. 775 (1894), which had been overruled in part by *Morelli* v. *Manpower, Inc.*, 226 Conn. 831, 628 A.2d 1311 (1993), had been misplaced because the statute at issue in that case concerned the granting of liquor licenses, not zoning decisions; (2) that such an interpretation created an inconsistency in our law, whereby taxpayers do not have automatic standing to appeal other zoning decisions that affect the general welfare, but may appeal zoning decisions involving the sale of liquor that may affect the general welfare; (3) that other states do not confer automatic standing in zoning appeals involving the sale of liquor; (4) that the policy considerations supporting such an interpretation, namely, that there is a presumed pecuniary effect upon every taxpayer resulting from the incidents of the sale of liquor and that there is an increased source of danger from the sale of liquor that is not present in other businesses, are debatable; and

the plaintiffs were neither statutorily nor classically aggrieved and, in the trial court's view, should no longer be considered automatically aggrieved based solely on the fact that they were taxpayers appealing from a zoning decision involving a liquor outlet, the trial court concluded that it was without subject matter jurisdiction to consider the merits of the plaintiffs' appeal.[11]

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

I

The plaintiffs first claim that the trial court improperly concluded that Cyrco had not waived its right to

(5) that if the legislature had intended to confer such automatic aggrievement status, it could have expressly done so, as it did in § 8-8 (a) with regard to property abutting or within 100 feet of the property involved in the zoning decision.

[11] Following its conclusion that it did not have subject matter jurisdiction to consider the merits of the plaintiffs' appeal, however, the trial court stated that "[o]rdinarily it is not appropriate for the court to rule on the merits of the appeal where there is no subject matter jurisdiction. . . . However, the plaintiffs did have standing as resident taxpayers to challenge the variance for a package store under prior case law. A higher court may have a different view on whether the rule on standing in liquor cases should be changed, and in the interest of judicial economy a ruling on the merits is appropriate here if the plaintiffs successfully appeal on the aggrievement issue." Thereafter, the trial court considered the merits of the plaintiffs' appeal and found that Cyrco had failed to prove hardship and, therefore, that the board had improperly granted its variance.

Cyrco contends that the trial court improperly considered the merits of the appeal after having concluded that it lacked subject matter jurisdiction. Although the plaintiffs agree that this is ordinarily true, they argue that because of the highly unusual situation involved, wherein the trial court refused to follow existing Supreme Court precedent and conceded the possibility that a higher court might not agree with its decision, the trial court's consideration of the merits of the case was appropriate. We agree with Cyrco.

It is axiomatic that a court is bound to dismiss a case once it determines that it lacks subject matter jurisdiction. *Light Rigging Co.* v. *Dept. of Public Utility Control*, 219 Conn. 168, 172, 592 A.2d 386 (1991); *Kinney* v. *State*,

contest the court's jurisdiction by failing to file a motion to dismiss for lack of jurisdiction in accordance with § 8-8 (j).[12] The plaintiffs argue that § 8-8 (j) mandates that jurisdiction can be contested only by a motion to dismiss and that failure to file such a motion, therefore, results in a waiver of one's right to contest jurisdiction in the future. We disagree.

We previously have indicated that pleading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. *Park City Hospital* v. *Commission on Hospitals & Health Care*, 210 Conn. 697, 702–703, 556 A.2d 602 (1989); *Fletcher* v. *Planning & Zoning Commission*, 158 Conn. 497, 501, 264 A.2d 566 (1969); *Hughes* v. *Town Planning & Zoning Commission*, 156 Conn. 505, 509, 242 A.2d 705 (1968). Failure to raise the issue of aggrievement is not a bar to future consideration of that issue because aggrievement implicates the court's subject matter jurisdiction. See *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 307, 592 A.2d 953 (1991). "A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised. The parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent. *Serrani* v. *Board of Ethics*, 225 Conn. 305, 308, 622 A.2d 1009 (1993); *In re Judicial Inquiry No. 85-01*, 221 Conn. 625, 629, 605 A.2d 545 (1992); *Castro* v. *Viera*, 207 Conn. 420, 429–30, 541 A.2d 1216 (1988); Practice Book §§ 143, 145." *Sadloski* v. *Manchester*, 228 Conn. 79, 84, 634 A.2d 888 (1993), on appeal after remand, 235 Conn. 637, 668 A.2d 1314 (1995). "Ordinarily, a challenge to the court's jurisdiction is raised by the filing of a motion to dismiss. How-

213 Conn. 54, 58, 566 A.2d 670; *Cahill* v. *Board of Education*, 198 Conn. 229, 238, 502 A.2d 410 (1985). Thus, the court's consideration of the merits of the appeal in the present case was improper.

[12] See footnote 1.

ever, '[w]henever a lack of jurisdiction to entertain a particular proceeding comes to a court's notice, the court can dismiss the proceeding upon its own motion.' " *Park City Hospital* v. *Commission on Hospitals & Health Care*, supra, 702. Section 8-8 (j) does not present an exception to this rule. In the present case, therefore, we conclude that the trial court properly considered the issue of the plaintiffs' aggrievement prior to reaching the merits of the plaintiffs' appeal.

## II

The plaintiffs next claim that the trial court, by dismissing their appeal for lack of subject matter jurisdiction, improperly ignored binding Connecticut Supreme Court precedent wherein we have consistently concluded, pursuant to § 8-8 (a), that taxpayers in zoning appeals involving liquor outlets are presumed to be aggrieved and, therefore, have automatic standing to appeal.[13] See *Macaluso* v. *Zoning Board of Appeals*,

---

[13] As an alternate ground for affirmance, Cyrco claims that the trial court improperly considered the issue of automatic aggrievement in zoning decisions involving the sale of liquor because the plaintiffs had neither properly pleaded nor proved such aggrievement. In support of this claim, Cyrco argues that an obligation to pay taxes does not necessarily establish that the plaintiffs had actually paid their taxes. We are unpersuaded.

To establish aggrievement, first, "the plaintiff [must allege] facts which, if proven, would constitute aggrievement as a matter of law, and, second . . . [prove] the truth of those factual allegations." *Beckish* v. *Manafort*, 175 Conn. 415, 419, 399 A.2d 1274 (1978). In their appeal to the trial court, the plaintiffs alleged facts that, if true, would adequately support their claim of automatic aggrievement. Specifically, they alleged that Richard and Carman Tuliano owned and operated the business and property located at 874 Boston Avenue in Bridgeport, that Cyrco had requested a waiver of the regulation prohibiting the establishment of a liquor outlet within 1500 feet of another liquor outlet, and that the plaintiffs, as the owners, operators and permittees of a liquor outlet within 1500 feet of the property that is the subject of the application, are aggrieved by such a decision. During the court proceedings, the plaintiffs testified and presented evidence to support their allegation that they owned and operated property and a business located in Bridgeport. No other evidence was presented on the issue of the plaintiffs' taxpayer status. Thereafter, in its memorandum of decision, the trial court concluded that "the plaintiffs did have standing as resident taxpay-

167 Conn. 596, 600–601, 356 A.2d 885 (1975); *Dolan* v. *Zoning Board of Appeals*, 156 Conn. 426, 428, 242 A.2d 713 (1968); *M. & R. Enterprises, Inc.* v. *Zoning Board of Appeals*, 155 Conn. 280, 281–82, 231 A.2d 272 (1967); *Cowles* v. *Zoning Board of Appeals*, 153 Conn. 116, 117, 214 A.2d 361 (1965); *Whitney Theatre Co.* v. *Zoning Board of Appeals*, 150 Conn. 285, 287, 189 A.2d 396 (1963); *London* v. *Planning & Zoning Commission*, 149 Conn. 282, 284, 179 A.2d 614 (1962); *Tyler* v. *Board of Zoning Appeals*, 145 Conn. 655, 661, 145 A.2d 832 (1958); *Zuckerman* v. *Board of Zoning Appeals*, 144 Conn. 160, 163–64, 128 A.2d 325 (1956); *O'Connor* v. *Board of Zoning Appeals*, 140 Conn. 65, 71–72, 98 A.2d 515 (1953); *Farr* v. *Zoning Board of Appeals*, 139 Conn. 577, 583, 95 A.2d 792 (1953).[14] The issues raised by the plaintiffs have two parts: (1) whether the trial court improperly ignored binding precedent in concluding that the plaintiffs could not establish aggrievement solely by showing that they were taxpayers appealing a zoning decision involving a liquor outlet; and (2) whether we should overrule our prior interpretation and subsequent application of § 8-8 (a), wherein we have held that taxpayers are, a priori, aggrieved persons under § 8-8 if the zoning decision involves premises used or to be used for the sale of liquor.

ers to challenge the variance for a package store under prior case law." Although Richard and Carman Tuliano are not residents of Bridgeport, we have previously held that nonresident taxpayer status is sufficient to establish automatic aggrievement in this context. See footnote 14. Thus, the court implicitly took judicial notice of the fact that proof of ownership of property within a city is sufficient to establish a presumption that one is a taxpayer in that city. Cyrco presented no evidence to contradict this finding. We conclude that the trial court's determination is adequately supported by the evidence and, therefore, we reject Cyrco's alternate ground for affirmance.

[14] Originally, we relied upon a plaintiff's status as a taxpayer and as a resident of the municipality in support of the automatic aggrievement rule. Later, however, we clarified that taxpayer status alone is sufficient to establish a presumption of aggrievement. See *Tyler* v. *Board of Zoning Appeals*, supra, 145 Conn. 660; *Zuckerman* v. *Board of Zoning Appeals*, supra, 144 Conn. 164.

## A

It is axiomatic that a trial court is bound by Supreme Court precedent. See *Martin* v. *Plainville*, 40 Conn. App. 179, 182, 669 A.2d 1242 (1996) (Appellate Court, as intermediate court, is prevented from reexamining or reevaluating Supreme Court precedent); *Brunswick* v. *Inland Wetlands Commission*, 25 Conn. App. 543, 553, 596 A.2d 463 (1991), rev'd on other grounds, 222 Conn. 541, 610 A.2d 1260 (1992) (same); *Board of Education* v. *Bridgeport Education Assn.*, 9 Conn. App. 199, 203–204, 518 A.2d 394 (1986), cert. denied, 202 Conn. 802, 519 A.2d 1206 (1987) (same); see also *O'Connor* v. *O'Connor*, 4 Conn. App. 19, 20, 492 A.2d 207 (1985), rev'd on other grounds, 201 Conn. 632, 519 A.2d 13 (1986) (same). This principle is inherent in a hierarchical judicial system. In the present case, it is undisputed that the trial court determined that under existing case law the plaintiffs had standing to appeal because they were taxpayers appealing from a zoning decision involving premises concerned with the sale of liquor and, therefore, were considered to be automatically aggrieved. The trial court refused to follow the precedent compelling this conclusion, however, because the court disagreed with our existing interpretation of the phrase "aggrieved person" as set forth in § 8-8 (a). See footnote 1. Although the concerns raised by the trial court might ultimately have merit and support its contention that the time has come to reconsider the propriety of the automatic aggrievement rule, revision of Supreme Court precedent is not the trial court's function.[15] The trial court, therefore, improperly ignored this

---

[15] We note our agreement with the plaintiffs' suggestion that "[p]erhaps a more appropriate decision would have been for the trial court to sustain the plaintiffs' appeal based upon existing precedent and at the same time [to state] the court's opinion as expressed in its decision regarding such rules. The defendants, collectively or individually, would then have had the right to appeal to [the Supreme Court] requesting that it review its prior decisions."

court's precedent in concluding that the plaintiffs were not aggrieved.

## B

The board and Cyrco contend, however, that even if we were to conclude that the trial court improperly ignored our precedent concerning automatic aggrievement, we should, nevertheless, reconsider the viability of that precedent and overrule it on our own. We decline to do so.

" 'Stare decisis gives stability and continuity to our case law. This court, however, has recognized many times that there are exceptions to the rule of stare decisis. Principles of law which serve one generation well may, by reason of changing conditions, disserve a later one. . . . Experience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better. . . . The adaptability of the common law to the changing needs of passing time has been one of its most beneficent characteristics. A court, when once convinced that it is in error, is not compelled to follow precedent. . . . If, however, stare decisis is to continue to serve the cause of stability and certainty in the law—a condition indispensable to any well-ordered system of jurisprudence—a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . *This is especially true when the precedent involved concerns the interpretation or construction of a statute.'* . . . *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 62, 111 A.2d 4 (1955); see *Kluttz* v. *Howard*, 228 Conn. 401, 406, 636 A.2d 816 (1994); *White* v. *Burns*, 213 Conn. 307, 335–36, 567 A.2d 1195 (1990)." (Emphasis added.) *General Electric Employees Federal Credit Union* v. *Zakrzewski*, 235 Conn. 741, 744, 670 A.2d 274 (1996). We are not persuaded that the board and Cyrco have presented cogent reasons and inescapable logic for

overruling our precedent interpreting § 8-8 (a) to establish a rule of automatic standing to appeal.

In *O'Connor* v. *Board of Zoning Appeals*, supra, 140 Conn. 71–72, we interpreted the aggrievement requirement for zoning appeals relying on the court's reasoning in an earlier decision, *Beard's Appeal*, 64 Conn. 526, 534, 30 A. 775 (1894).[16] Although *Beard's Appeal* involved our interpretation of the term "aggrievement" as used in a statute dealing with the granting of liquor licenses, in *O'Connor* we concluded that the reasoning in *Beard's Appeal* applied "with like force and reason to the same word as used in [the zoning appeals statute]." *O'Connor* v. *Board of Zoning Appeals*, supra, 72. "In *Beard's Appeal*, [supra, 534] Justice Simeon E. Baldwin [stated]: '[E]very owner of property, assessed in the grand list of the town in which he resides, has a substantial interest in the prosperity and good order of that town. The expense of the local police of any town, as well as of criminal proceedings before its local tribunals, is largely dependent on the number of the liquor saloons and bar rooms within its limits, and the character of those who keep them. If licenses are granted with too free a hand, or without proper discrimination, the burdens of taxation are likely to be increased. Every taxpayer therefore has a certain, though it may be small, pecuniary interest in having the license law well administered; and if he is also a resident in the town where he pays his taxes, he has an additional interest, common to every citizen, in promoting the general welfare of the community. In view of these considerations, we think that any resident taxpayer of a town who feels aggrieved at the granting of a license for the sale of liquors therein, has the right

---

[16] In *O'Connor* v. *Board of Zoning Appeals*, supra, 140 Conn. 70, we were interpreting § 160b of the 1951 Cumulative Supplement to the General Statutes, which was an earlier version of General Statutes § 8-8 (a), and provided in relevant part: "Appeals from board to court. Any person or persons severally or jointly aggrieved by any decision of said board . . . may . . . take an appeal to the court . . . ."

of appeal under the [Public Acts] of 1893, and that he is not bound to show any grievance or interest in the matter peculiar to himself, either in his own motion for an appeal before the county commissioners, or by reasons of appeal in the Superior Court.' " *O'Connor* v. *Board of Zoning Appeals*, supra, 71–72.

Later, in *Tyler* v. *Board of Zoning Appeals*, supra, 145 Conn. 661, another case in which we considered aggrievement in the context of a zoning appeal,[17] we observed: "The essence of the holdings in *Beard's Appeal*, supra, [64 Conn. 534] and the cases which have followed it, is that to be an aggrieved person within the meaning of the statute one must show a pecuniary interest injuriously affected by the action of the zoning board of appeals and that such a showing may be sufficiently made, in a case where liquor traffic is involved, by proof that one is a taxpayer in the town, in view of the pecuniary effect upon every taxpayer resulting from the incidents of such traffic. Such a distinction recognizes, again, that in liquor traffic there is a possible source of danger to the public which is not inherent in other businesses and that therefore such traffic warrants distinctive and particular treatment."

More recently, we again addressed the policy reasons behind the automatic aggrievement rule. In *Macaluso*, the defendant had "attacked as anachronistic the policy considerations underlying our longstanding principle that in cases in which traffic in liquor is involved and a statute similar to § 8-8 conferring a right of appeal upon persons aggrieved by decisions of a zoning board of appeals is applicable, a resident taxpayer of a town is a priori an aggrieved person with standing to prosecute the appeal, and need not show that he has an

---

[17] In *Tyler* v. *Board of Zoning Appeals*, supra, 145 Conn. 657, we were considering § 379d of the 1955 Cumulative Supplement to the General Statutes, which was an identical, but later enactment of § 160b of the 1951 Cumulative Supplement. See footnote 16.

interest peculiar to himself. . . . These cases have recognized that the sale and use of liquor may involve such a risk that a resident taxpayer of a town has a sufficient pecuniary interest as well as a sufficient interest in the general well-being of his community to allow him to appeal such decisions. . . . The defendant has not persuaded us to reconsider the merits of the principle of appellate procedure embodied in these decisions." (Citations omitted.) *Macaluso* v. *Zoning Board of Appeals*, supra, 167 Conn. 600–601.[18]

The problems associated with the sale and use of alcohol in our society today are common knowledge. On appeal, neither the board nor Cyrco has presented any evidence to suggest that these problems have abated. We remain convinced that the sale and use of alcohol, and its concomitant abuse and significant role in criminal activity, result in an increased risk to the general well-being of the community as well as an increased risk of pecuniary loss to the taxpayer largely resulting from the increased need for policing.

The board and Cyrco argue that the rationale for the automatic standing rule is not applicable in the present case because the challenged zoning decision does not increase the number of liquor outlets in Bridgeport; rather, a single existing liquor outlet is being moved from one location to another and, therefore, there will not be an increased need for policing due to the board's decision. In fact, Cyrco argues that there will be a reduction in the need for local police because its liquor store is being moved further away from the plaintiffs' store

---

[18] In *Macaluso* v. *Zoning Board of Appeals*, supra, 167 Conn. 600–601, we considered arguments similar to those raised by the board and Cyrco in the present case. In that case, the defendant had argued that the rationale underlying *Beard's Appeal* did not apply in society at that time, and that the rule of automatic aggrievement was being used by competitors to thwart otherwise legitimate and fair competition.

and is being moved from an isolated area to a "far safer main thoroughfare." We are not persuaded.

In *O'Connor*, we construed a zoning regulation similar to the 1500 foot regulation at issue in the present case as a declaration of policy by the town that the *location* of existing liquor stores has an effect on the general welfare of the community. *O'Connor* v. *Board of Zoning Appeals*, supra, 140 Conn. 70. "[T]he town council took cognizance of the potential danger from this traffic and that the [1500 foot] restriction was enacted as one means of attempting to keep it within bounds. Although under the present Liquor Control Act the so-called 'old fashioned saloon' of earlier days has been supplanted by the variously designated places of the licensed dispensing permittees for which it provides, the potential menace of the traffic persists. It is a matter of common knowledge that a large percentage of today's serious crimes stems from the excessive use of alcohol and that the hazard to life and limb from intoxication has been tremendously increased by the advent of present-day automobile traffic. These are material considerations in determining the meaning of the word 'aggrieved' as used in [the zoning appeal statute] . . . ." Id., 70–71. We agree with the reasoning in *O'Connor* that Bridgeport has expressed a policy in its 1500 foot rule, namely, that the specific location of liquor stores within city bounds substantially affects the public welfare, regardless of any increase or decrease in the number of liquor stores in the aggregate. We conclude, therefore, that the rationale behind the automatic aggrievement rule is applicable in the present case.

In determining whether to overrule precedent, particularly precedent that is a product of statutory interpretation, such as the automatic aggrievement rule, subsequent legislative action or inaction is a key consideration. "[T]he legislature is presumed to be aware of

the interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation. . . . This presumption is strengthened when the legislature has affirmatively reenacted the statute after the interpretation in question." (Citations omitted; internal quotation marks omitted.) *Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 627, 594 A.2d 464 (1991).

This consideration is compelling in the present case. Since 1953, this court has consistently held that a resident taxpayer appealing a zoning decision involving the sale of liquor is, a priori, an aggrieved person under § 8-8 (a). See *Macaluso* v. *Zoning Board of Appeals,* supra, 167 Conn. 600–601; *Dolan* v. *Zoning Board of Appeals,* supra, 156 Conn. 428; *M. & R. Enterprises, Inc.* v. *Zoning Board of Appeals,* supra, 155 Conn. 281–82; *Cowles* v. *Zoning Board of Appeals,* supra, 153 Conn. 117; *Whitney Theatre Co.* v. *Zoning Board of Appeals,* supra, 150 Conn. 287; *London* v. *Planning & Zoning Commission,* supra, 149 Conn. 284; *Tyler* v. *Board of Zoning Appeals,* supra, 145 Conn. 661; *Zuckerman* v. *Board of Zoning Appeals,* supra, 144 Conn. 163–64; *O'Connor* v. *Board of Zoning Appeals,* supra, 140 Conn. 71–72; *Farr* v. *Zoning Board of Appeals,* supra, 139 Conn. 583. Since that time the legislature has revisited § 8-8 on numerous occasions and has never indicated that our interpretation was not what it had intended.

In 1977, the legislature amended the definition of "aggrieved person" to include a presumption of aggrievement for a person whose land abuts or is within a 100 foot radius of the land involved in the decision. See Public Acts 1977, No. 77-470; Public Acts 1967, Nos. 348, 712. It has since rejected proposals to remove these automatic aggrievement provisions. See 32 H.R. Proc., Pt. 25, 1989 Sess., pp. 8816–27.

Furthermore, in 1988, we interpreted General Statutes (Rev. to 1987) § 8-8 (b)[19] to require that the clerk of a municipality be a necessary party to the proper institution of a zoning appeal and be served properly with true and attested copies of the appeal, and we determined that failure to do so is a jurisdictional defect that renders the zoning appeal subject to dismissal. *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 383, 538 A.2d 202 (1988). Shortly thereafter, in direct response to our decision in *Simko*, the legislature adopted an amendment to § 8-8 (b), which clearly indicated its disagreement with our interpretation.[20] See Public Acts 1988, No. 88-79, § 1; see also 31 S. Proc., Pt. 4, 1988 Sess., pp. 1118–36; 31 H.R. Proc., Pt. 4, 1988 Sess., pp. 1344–60. Thus, it is apparent that the legislature has had numerous opportunities to amend § 8-8 if our interpretation of "aggrieved person" was not what was intended. Its failure to do so is, in effect, a legislative validation of the automatic aggrievement rule in taxpayer appeals from decisions involving the sale of liquor.

---

[19] General Statutes (Rev. to 1987) § 8-8 (b) provided: "Notice of such appeal shall be given by leaving a true and attested copy thereof with, or at the usual place of abode of, the chairman or clerk of said board, and by serving a true and attested copy upon the clerk of the municipality. The appeal shall state the reasons upon which it has been predicated and shall not stay proceedings upon the decision appealed from, but the court to which such appeal is returnable may, on application, on notice to the board and on cause shown, grant a restraining order."

[20] Number 88-79, § 1, of the 1988 Public Acts, which amended General Statutes (Rev. to 1987) § 8-8 (b), provided: "Notice of such appeal shall be given by leaving a true and attested copy thereof with, or at the usual place of abode of, the chairman or clerk of said board, and by serving a true and attested copy upon the clerk of the municipality, PROVIDED SERVICE UPON THE CLERK OF THE MUNICIPALITY SHALL BE FOR THE PURPOSE OF PROVIDING ADDITIONAL NOTICE OF SUCH APPEAL TO SAID BOARD AND SHALL NOT THEREBY MAKE SUCH CLERK A NECESSARY PARTY TO SUCH APPEAL. The appeal shall state the reasons upon which it has been predicated and shall not stay proceedings upon the decision appealed from, but the court to which such appeal is returnable may, on application, on notice to the board and on cause shown, grant a restraining order."

Cyrco also claims that there is no rational distinction between allowing automatic aggrievement in appeals involving liquor outlets and not allowing it in appeals involving other dangerous businesses, such as adult video and bookstores, adult entertainment clubs, X-rated movie theaters, massage parlors, pool halls, gun dealers, pawn shops, and all-night convenience stores. Cyrco argues that the automatic aggrievement rule unreasonably discriminates against it as a beneficiary of a zoning variance involving the sale of liquor and deprives it of equal protection of the law. This claim has no merit.

"[W]e are guided by the familiar principles that a statute is not invalid under the Constitution because it might have gone farther than it did . . . that a legislature need not strike at all evils at the same time . . . and that reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind . . . . Legislatures may implement their program step by step . . . adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." (Citations omitted; internal quotation marks omitted.) *Benjamin* v. *Bailey*, 234 Conn. 455, 478, 662 A.2d 1226 (1995). Even if Cyrco were correct that risks associated with the aforementioned businesses are as great as those associated with the sale of liquor, the legislature is permitted to address those concerns in its own time. Its failure to address all problems at once does not constitute impermissible discrimination.

The judgment is reversed and the case is remanded for a determination of the merits of the plaintiffs' appeal.

In this opinion PETERS, C. J., and CALLAHAN and BORDEN, Js., concurred.

BERDON, J., dissenting. The majority asserts two reasons for reaffirming this court's interpretation of General Statutes § 8-8 that taxpayers are automatically aggrieved with respect to zoning decisions involving liquor outlets, thereby providing them with standing to appeal: (1) stare decisis; and (2) legislative silence. Under the circumstances of this case, neither of these reasons justifies reaffirmation of this anachronistic policy.

The plaintiffs Richard and Carman Tuliano (Tulianos), business competitors of the defendant Cyrco, Inc. (Cyrco), claim to be aggrieved and seek the benefit of the automatic aggrievement rule. The Tulianos are the owners and operators of the plaintiff Jolly, Inc., a corporation doing business as Jolly Time Package, a liquor store located appropriately 500 feet from the location of Cyrco's liquor store. In November, 1993, Cyrco sought to move its business to a new location that was exposed to greater traffic and that would be 1430 feet away from the Tulianos' store. For this reason, Cyrco filed two variance applications with the named defendant, the Bridgeport zoning board of appeals (board). The board granted both of Cyrco's variances, one of which allowed a variance from the regulatory requirement that there be 1500 feet between liquor outlets. Subsequently, the Tulianos filed an appeal to challenge the board's actions.

I agree that "[s]tare decisis gives stability and continuity to our case law"; *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 62, 111 A.2d 4 (1955); and we therefore should follow our own precedent. But when the reasoning of that precedent is patently flawed or it has no contemporary relevance it must be set aside. "[P]rinciples of law which serve one generation well may, by reason of changing conditions, disserve a later one. . . . Experience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice bet-

ter." (Citations omitted; internal quotation marks omitted.) *Connecticut Junior Republic* v. *Sharon Hospital*, 188 Conn. 1, 17–18, 448 A.2d 190 (1982). In overruling prior case law because of a change in public policy considerations, we recently had occasion to quote Justice Oliver Wendell Holmes: " 'It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.' O. Holmes, 'The Path of the Law,' 10 Harv. L. Rev. 457, 469 (1897)." *Brunswick* v. *Inland Wetlands Commission*, 222 Conn. 541, 554–55, 610 A.2d 1260 (1992).

The majority adheres to the rule of automatic aggrievement that is derived from the 1894 case of *Beard's Appeal*, 64 Conn. 526, 30 A. 775 (1894). In that case, aggrievement was based upon an interpretation of a statute which gave "resident taxpayers" the right to appeal the granting of a license to sell liquor. Id., 533. In justifying its interpretation to allow resident taxpayers the right to appeal, the court noted certain concerns associated with the operation of a liquor outlet. "The expense of the local police of any town, as well as of criminal proceedings before its local tribunals, is largely dependent on the number of the liquor saloons and bar rooms within its limits, and the character of those who keep them. If licenses are granted with too free a hand, or without proper discrimination, the burdens of taxation are likely to be increased. *Every taxpayer* therefore has a certain, though it may be a small, pecuniary interest in having the license law well administered; *and if he is also a resident* in the town where he pays his taxes, he has an additional interest, common to every citizen, in promoting the general welfare of the community." (Emphasis added.) Id., 534. Based upon that reasoning, this court deemed all resident tax-

payers to be automatically aggrieved with respect to zoning decisions that pertain to the sale of liquor. *O'Connor* v. *Board of Zoning Appeals*, 140 Conn. 65, 71–72, 98 A.2d 515 (1953). Subsequently, this court expanded the rule to include nonresident taxpayers, such as the Tulianos here. *Zuckerman* v. *Board of Zoning Appeals*, 144 Conn. 160, 164, 128 A.2d 325 (1956).

As indicated by the trial court in this case, every reason that has been advanced for granting taxpayers automatic standing to challenge decisions of zoning boards regarding the traffic of liquor has long ceased to exist. The liquor control commission has replaced the taxpayer in policing the character of those who dispense liquor and the manner in which a liquor outlet is operated, and other zoning regulations control the number of establishments. Indeed, as Judge Fuller wrote in his trial court memorandum of decision: "The interlocking scheme of controls by the municipal zoning ordinance and the department of liquor control mitigate possible harm to the public interest expressed in the cases upholding the liquor exception. Under the present scheme of liquor control there are many kinds of permits, and as a practical matter many of them create no danger to the public or result in turning intoxicated drivers or criminals loose in the municipality. . . . Maintaining an automatic appeal for any taxpayer in the municipality where a liquor permit is granted for any type of sale is unrealistic under the modern scheme of liquor regulation. Many if not most businesses conducted under one or more of the categories of liquor permits pose no greater danger to the public safety, morals or welfare than other businesses, including many types of retail stores, warehouses, garages, service stations and adult book stores."[1]

---

[1] The majority unfairly states that "neither the board nor Cyrco has presented any evidence to suggest that these problems have abated." As Cyrco clearly states in its brief, "[s]ince the trial court thoroughly researched and examined the issues [regarding the obsolescence of the automatic

Secondly, the majority asserts that the legislature has impliedly consented to this court's interpretation of § 8-8 that grants automatic aggrievement to taxpayers who wish to challenge zoning decisions pertaining to a liquor outlet. In this case, for the reasons mentioned previously, the automatic aggrievement rule has ceased to have any contemporary purpose. Therefore, unlike *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 627, 594 A.2d 464 (1991), which is relied upon by the majority, or *Hansen* v. *Gordon*, 221 Conn. 29, 35–36, 602 A.2d 560 (1992), both of which had contemporary purposes supporting the court's respective statutory interpretations, the legislature's silence in this matter should not be construed as an implicit approval of the rule.

This distinction is clearly demonstrated in the recent case of *Brunswick* v. *Inland Wetlands Commission*, supra, 222 Conn. 541, which was authored by Chief Justice Peters. In *Brunswick*, this court overruled the 1879 case of *Doolittle* v. *Clark*, 47 Conn. 316 (1879), which interpreted the mesne process statute to prohibit an attorney, who is a commissioner of the Superior Court, from signing a writ in his own case. General Statutes (1875 Rev.) title 19, chapter 1, § 1, the statute at issue in *Doolittle*, now General Statutes § 52-45a, was amended at least six times after *Doolittle* was decided. At no time, however, did the legislature reverse the *Doolittle* holding by enacting an appropriate amendment to the statute. Nevertheless, the *Brunswick* court held that "[a]bsent the public policy reasons that existed in 1879 . . . adherence to [that] rule . . . no longer serves any purpose." *Brunswick* v. *Inland Wetlands Commission*, supra, 554. Similarly, this court's statutory interpretation that taxpayers are automatically

---

aggrievement rule], it would serve no purpose to simply reiterate the court's reasoning . . . ."

aggrieved when challenging a zoning decision relating to the sale of liquor should be abandoned.

In addition to determining that the Tulianos were not automatically aggrieved, the trial court also determined that they were not classically aggrieved. To be classically aggrieved, an appellant must satisfy a two part test: (1) the appellant must have a specific, personal and legal interest in the subject matter of the decision; and (2) this interest must have been specially and injuriously affected by the board's decision. *Walls* v. *Planning & Zoning Commission*, 176 Conn. 475, 477–78, 408 A.2d 252 (1979). The trial court found that "the [Tulianos] have not met their burden of proof that they are specially and injuriously affected by the shifting of [Cyrco's] package store . . . . There is no evidence of any adverse affect from an increase in traffic, change in traffic patterns or any physical impact upon the [Tulianos'] property by the opening of a package store in an existing building 1430 feet away."

Rather, the trial court determined that "[t]he impact claimed by the [Tulianos] amounts to a speculative fear of loss of economic advantage, or more specifically, [a] concern that the proposed package [store] . . . will cut into the [Tulianos'] liquor business. However, a business competitor of a successful applicant for a variance, zoning permit or special exception is not classically aggrieved without a showing of injury to his property rights, and merely being a business competitor is insufficient." The Tulianos do not challenge the trial court's classical aggrievement analysis and I do not find it to be erroneous. Therefore, I would affirm the trial court's finding that the Tulianos have proven neither statutory aggrievement nor classical aggrievement.

In my view, the automatic aggrievement rule should be abandoned and the trial court's decision affirmed

on the ground that the Tulianos were not classically aggrieved.

Accordingly, I dissent.