[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. STATEMENT OF APPEAL
The plaintiff, Beaver Dam Lake Association, Inc. (Beaver Dam), appeals from a decision of the defendant, Zoning Board of Appeals of the Town of Stratford (the Board), in which the Board granted the request of the defendant C.B.L., Inc. (CBL) for a zoning variance. Beaver Dam appeals pursuant to General Statutes § 8-8.
 II. BACKGROUND
Beaver Dam alleges that CBL took title to property located at Lot 1, Beaver Dam Road, which is classified as a residential district, on August 28, 1997. (Appeal ¶¶ 2, 7). Beaver Dam is an abutting land owner to the proposed development site. (Appeal ¶ 5). On or about August 29, 1997, CBL applied to the Board for a variance from Zoning Regulations of the Town of Stratford § 3.14,[1] in order to allow the construction of a single family house. (Appeal ¶ 2). The variance was granted by the Board on December 9, 1997 without a public hearing. (Appeal ¶ 4). The Board's decision was published on December 9, 1997. (Return of Record [ROR] 8). Beaver Dam appeals the decision of the Board, and alleges that CBL failed to demonstrate to the Board that a hardship existed which would support the need for a variance. Beaver Dam further alleges that the Board acted arbitrarily, illegally and in abuse of its discretion by granting CBL's request for a variance. (Appeal ¶¶ 10, 13). The appeal was filed with the clerk of the superior court on December 24, 1997. The Board filed a return of record on February 2, 1998. Beaver Dam filed a brief on April 27, 1998, and the Board filed a reply brief on May 29, 1998. A hearing was held by the court,Cutsumpas, J., on March 17, 1999. CT Page 5630
 III. JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board of appeals to the superior court. "[A] statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . [The statutory] provisions are mandatory and jurisdictional in nature, and if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.)Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988).
 A. Aggrievement
An aggrieved person "is a person who is aggrieved by the decision of a board. . . ." General Statutes § 8-8(a)(1). "To be classically aggrieved, an appellant must satisfy a two-part test: (1) the appellant must have a specific, personal and legal interest in the subject matter of the decision; and (2) this interest must have been specially and injuriously affected by the board's decision." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 208, 676 A.2d 831 (1996). "The plaintiff can demonstrate statutory aggrievement pursuant to [General Statutes] § 8-8(a)(1) if she can demonstrate that her property abuts or is within 100 feet of any portion of the land involved in the decision of the commission." (Internal quotation marks omitted.)McNally v. Zoning Commission, 225 Conn. 1, 6, 621 A.2d 279
(1993). "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals, supra, 237 Conn. 192.
Beaver Dam alleges that it is the owner of the land abutting the subject property. (Appeal ¶ 5). Uncontroverted testimony regarding this fact was received during oral argument on March 17, 1999. Accordingly, the court finds that Beaver Dam has pleaded and proven that it is statutorily aggrieved by the decision of the board.
 B. Timeliness and Service of Process
General Statutes § 8-8(b) provides, in pertinent part, that an "appeal shall be commenced by service of process in CT Page 5631 accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Here, the notice of the Board's granting of CBL's request for the variance was published on December 9, 1997, (ROR 8), and service of process was made on December 17, 1997 (Sheriff's Return).
Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or the clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8(e). The sheriff's return indicates that Patricia P. Ulatowski, Town Clerk of the Town of Stratford, and Hugh Catalano, Chairman and Clerk of the Zoning Board of Appeals of the Town of Stratford, were properly served. (Sheriff's Return).
 C. Recognizance and Surety
General Statutes § 8-8(h) provides in pertinent part that "[t]he authority issuing a citation in the appeal shall take from the appellant . . . a bond or recognizance to the board, with surety to prosecute the appeal to effect and comply with the orders and decrees of the court." Such a bond in the amount of $500.00 was taken here. (Appeal Citation).
 IV. SCOPE OF REVIEW
"In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in an abuse of its discretion." (Internal quotation marks omitted). Smith v. ZoningBoard of Appeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S.Ct. 1190, 127 L.Ed.2d 540 (1994). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . ." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995). "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Id. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Id. "The reviewing court CT Page 5632 ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . ." (Internal quotation marks omitted.) West Hartford Interfaith Coalition Inc. v.Town Council, 228 Conn. 498, 515, 636 A.2d 1342 (1994). "Of course, where there is a failure to comply with the obligation to state reasons, the action is not deemed void but the court must search the record to see whether the board was justified in its decision." (Internal quotation marks omitted.) Id.
 V. DISCUSSION
The Board acted pursuant to General Statutes § 8-6(a)(3) and § 21.1[2] of the Zoning Regulations of the Town of Stratford in granting CBL's request for a zoning variance. Beaver Dam appeals the Board's decision on the ground that CBL did not demonstrate the hardship required to obtain a variance. Beaver Dam argues that as part of its application to the Board for the variance, CBL stated the following reason for hardship: "Due to topography of a lot and location of ten-inch water main easement across lot, house must be located where proposed." (ROR 12). Beaver Dam contends that this proposed hardship was not an unusual or exceptional circumstance, because at the time CBL acquired title to the subject property it knew the subject property: (1) was located in a wetland area; (2) abutted Beaver Dam Lake and the toe of an earthen dam; (3) contained underground water pipes; and (4) was subject to the restrictions of § 3.14. Beaver Dam further argues that even if the court finds that CBL has met a threshold for hardship, the grounds for hardship cannot be created by the applicant's voluntary acts. Beaver Dam contends that CBL knew of the state of the subject property when CBL purchased the subject property on August 26, 1997. Therefore, because CBL purchased the subject property knowing it was governed by certain zoning regulations, it may not now complain of a hardship arising from application of the regulations. Finally, Beaver Dam argues that the Board's action in granting the variance violated its own authority and regulations. According to Beaver Dam, CBL's application for a variance was first presented to the Board on October 7, 1997, at which time safety concerns regarding the wetlands and the earthen dam were raised by opponents of the variance. Beaver Dam contends that the Board tabled the variance issue until further safety data could be presented, and at a November 6, 1997 meeting, the CT Page 5633 Board again tabled the variance for the same reason. At a subsequent meeting held on December 2, 1997, however, the Board granted the request for the variance without having received any of the safety-related data, including a report from the Wetlands Commission or test results from the Army Corps of Engineers. As a result, argues Beaver Dam, the Board rendered its decision without identifying and evaluating the safety and environmental concerns raised by CBL's proposed use of the subject property.
The Board argues that in its application, CBL stated that the variance was sought, in part, based on reasons of topography, which may be a sufficient basis for granting a variance. The Board also argues that the subject property was a conforming lot within a subdivision that was approved in 1981, before § 3.14 was enacted. After § 3.14 was enacted ten years later, the subject property was rendered nonconforming, absent the owner obtaining a variance. The Board argues therefore that CBL did not create the hardship, because the hardship arose solely through a change in the zoning regulations. The board contends that a denial of the variance would have amounted to a practical confiscation of the property.
 A. Requirements for Granting of a Variance
"A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . Thus, the power to grant a variance should be sparingly exercised. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." Reid v. ZoningBoard of Appeals, 235 Conn. 850, 857, 670 A.2d 1271 (1996). "General Statutes § [8-6(a)(3)] empowers zoning boards of appeals to vary the application of zoning regulations if (1) the variance is shown not to affect substantially the comprehensive plan and (2) adherence to the strict letter of the zoning regulation is shown to cause unusual hardship unnecessary to carrying out the general purpose of the plan. . . . The statute provides that the board may grant variances `with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or CT Page 5634 regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . . . To support a variance, therefore, a hardship must arise from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owner's control. . . . The applicant bears the burden of demonstrating the existence of a hardship. " (Citations omitted; internal quotation marks omitted.) Pike v. Zoning Board ofAppeals, 31 Conn. App. 270, 273-74, 624 A.2d 909 (1993).
The following evidence was presented to the Board by CBL in support of its request for a variance. CBL purchased the subject premises through a quit claim deed dated August 28, 1997. (ROR 10). CBL's petition for a variance is dated August 26, 1997. (ROR 1). CBL stated on its application for a variance: "Due to topography of lot and location of ten-inch water main easement across lot, house must be located where proposed. This lot was created by subdivision on July 21, 1981. Section 3.14 of the Zoning Regulations went into effect on April 17, 1997. Accordingly, this lot represents a prior non-conforming use with respect to Section 3.14." (ROR 1 Schedule A). CBL presented substantially the same evidence at the time of the October 7, 1997 hearing on its application. Specifically, CBL's attorney stated: "In any event, with respect to hardship, our claim is that, due to the topography of the lot and the sloping of it from back to front, and the location of the 30 inch water main easement across the lot, the house must be located where it's proposed. There really is no other place on this lot we could put this house. None." (ROR 27, Transcript, October 7, 1997, p. 7). Gary Lorentson, Planning and Zoning Administrator of the Stratford Board of Zoning Appeals, agreed with CBL's assessment. Staff comments prepared by Lorentson indicate that the subject lot "was created as part of a subdivision in 1981, prior to the adoption of Section 3.14 of the Zoning Regulations, which requires a 50 ft. setback to an inland wetland. It appears that the applicant has located the proposed house in the only feasible location on the property. This is due to the location of a water line which cuts through the property and the proximity of the wetlands." (ROR 20). The only evidence put on the record by Beaver Dam as to the issue of hardship was a statement by Beaver Dam's attorney that a similar request for a variance had been made by a prior builder to build on the subject property, and had been denied. (ROR 27, Transcript, October 27, 1997, pp. 17-18) The record does not contain any indication that such a prior CT Page 5635 request was made concerning the subject property however, and the board was never made aware of a prior variance disapproval. (ROR 27, Transcript, October 27, 1997, p. 15).
Accordingly, there is substantial evidence in the record to support the board's finding of hardship, and therefore the board's decision to grant CBL the variance was not illegal or arbitrary.
 B. Self-Created Hardship
"Variances cannot be personal in nature, and may be based only upon property conditions. . . . In fact, we have stated that [p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance. [T]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . limits the ability of zoning boards to act for personal rather than principled reasons, particularly in the context of variances." (Citations omitted; internal quotation marks omitted.) Reid v. Zoning Board ofAppeals, supra, 235 Conn. 857-58.
In Stillman v. Zoning Board of Appeals, 25 Conn. App. 631,636-37, 596 A.2d 1, cert. denied, 220 Conn. 923, 598 A.2d 963
(1991), it was argued that a hardship existed on the subject property because of the location of a well and a septic system, and because of the size of the lot. The placement of those improvements prevented the building of an addition to a house on the subject property anywhere except on the east side, which was prohibited by a setback requirement. The court held that "[t]hese unique conditions make the setback regulation exceptionally burdensome and support the board's granting of the variance." Id. The court also held that "[t]he hardship claimed . . . arises from the configuration of [the] lot and the location of the well and the septic system. These conditions are not personal . . . and would exist no matter who owned the lot." Id., 637.
CBL is faced with similar limitations imposed upon its use of the subject property. Building on the subject property is limited by the topography of the property as well as the running of a water main easement across the property. These limitations would exist regardless of who owned the property, and therefore are not personal in nature. It is also submitted that CBL's hardship was not self-created. "The self-created hardship rule provides that CT Page 5636 `[w]here the applicant . . . creates a nonconformity, the board lacks power to grant a variance.' Kulak v. Zoning Board ofAppeals, 184 Conn. 479, 482, 440 A.2d 183 (1981); Pollard v.Zoning Board of Appeals, 186 Conn. 32, 39, 438 A.2d 1186 (1982)."Osborne v. Zoning Board of Appeals, 41 Conn. App. 351, 354,675 A.2d 917 (1996). Because CBL is not responsible for the topography of the property or the presence of the water main easement through the property, the Board was justified in finding that the hardship was not self-created.
In addition, Beaver Dam's argument that CBL took title to the property with knowledge that it would need to apply for a variance, thereby creating its own hardship, should be rejected. "Where a nonconformity exists, it is a vested right which adheres to the land itself. `And the right is not forfeited by a purchaser who takes with knowledge of the regulations which are inconsistent with the existing use.' 1 Anderson, American Law of Zoning (2d Ed.) 6.37, p. 445. . . . Where the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance. . . . But it the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, then the purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance. . . . Otherwise the zoning ordinance could be unjust and confiscatory." (Citations omitted.) Adolphson v.Zoning Board of Appeals, 205 Conn. 703, 712-13, 535 A.2d 799
(1988).
 C. The Board's Failure to Follow Procedure
Beaver Dam next advances a general argument that the Board should have waited to make a decision on CBL's request for a variance until it received safety and environmental reports from other agencies, although Beaver Dam has not made a claim that the Board failed to adhere to one of its own rules of procedure. Beaver Dam's concern is that CBL's proposed plan would require blasting, which could disrupt the water main and/or the earthen dam, thereby endangering the lives and property of other Stratford citizens.
Beaver Dam has failed to sustain its burden of proof as the party appealing the Board's decision that the Board was required to wait until other agencies completed reports regarding the impact the proposed plan would have on the water main and the earthen dam.[3] General Statutes § 8-6(a)(3)[4] confers CT Page 5637 on the Board the authority to grant variances. The statute does not indicate that the Board must await reports from other agencies before deciding whether to grant a variance for a particular parcel of land.
Despite the fact that the Board is not required to wait for reports from other agencies before rendering its decision, the board's decision to grant the variance without further public discussion is supported by substantial evidence in the record. On October 1, 1997, the Town of Stratford Health Department informed Lorentson that the subject property had yet to receive approval for a septic system; that a design for the septic system had been tentatively approved pending further testing in the spring of 1998; and that "further testing is required as the foundation must be blasted and the ground water elevations must be re-established post blasting." (ROR 21, p. 2). Lorentson responded on October 15, 1997 that further tests revealed that blasting for the foundation was not required, and therefore there was no need for further testing. (ROR 21, p. 1). Lorentson further indicated that the septic system could be installed as designed. (ROR 21, p. 1). On November 7, 1997, the Board sent a letter to Bridgeport Hydraulic Co. (BHC)[5] in which the Board inquired as to whether the use of heavy equipment on the subject property could damage the water main and affect public safety, especially in close proximity to the earthen dam. (ROR 23). BHC responded by stating that it was informed that blasting was not required on the project; that it was concerned as to how the water main was going to be protected; and offered suggestions to minimize the risk of rupture for the water main. (ROR 24). BHC did not express an opinion as to the Board's inquiry concerning the earthen dam. (ROR 24). Also on November 7, 1997, the Board wrote a letter to the State Department of Environmental Protection (DEP), asking for the DEP's opinion as to the use of heavy equipment at the subject property in regards to the water main and the earthen dam. (ROR 25). The DEP responded that based on a review of the plans, the proposed construction was not integral to the dam and therefore CBL did not need to acquire a dam construction permit. (ROR 26). The DEP also stated that its "findings indicate that the dam will not be impacted as presently depicted on the construction drawings." (ROR 26). This opinion was based upon the understanding that no blasting would occur on the subject property. (ROR 26). The DEP also indicated that the Board should consult with BHC regarding the water main. (ROR 26).
There is substantial evidence in the record indicating that CT Page 5638 while CBL's application for a variance was tabled for discussion, the Board made inquiries and received information which addressed the concerns raised by Beaver Dam at the public hearing on October 7, 1997.[6] At the October 7, 1997 hearing, the Board entertained comments from those opposed to the granting of the variance, and then indicated that it would have to "look to get some other information from some other source" to address the water main and earthen dam concerns. (ROR 27, Transcript, p. 15). After receiving information from BHC and the DEP, the Board decided at the December 2, 1997 meeting that it then had enough information to take a vote on CBL's application for a variance, and moved by a vote of four to one to grant the application. (ROR 30). Accordingly, Beaver Dam's position that the Board granted the variance without waiting for further information regarding safety and environmental concerns is without merit.
 VI. CONCLUSION
The Board's actions in granting the variance were not unlawful, illegal, arbitrary, capricious or an abuse of its powers. Accordingly, Beaver Dam's appeal is dismissed.
CUTSUMPAS, J.